## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK E. HORTON and SHARON L. HORTON, ) ) ) Plaintiffs, ) ) v. ) ) BANK OF AMERICA, N.A., ) ) Defendant. ) | Case No. 16-CV-119-GKF-FHM |

### OPINION AND ORDER

Before the court is the Motion for Partial Judgment on the Pleadings [Dkt. #13] of defendant the Bank of America, N.A. ("BANA"). This case involves a dispute over a residential mortgage taken out by plaintiffs Mark and Sharon Horton in December 1985. The Hortons brought this action against BANA in January 2016, alleging breach of contract, unjust enrichment, negligence, fraud, violation of the Oklahoma Consumer Protection Act ("OCPA"), and slander of title. BANA moves for judgment on the pleadings as to the plaintiffs' unjust enrichment, negligence, fraud, and OCPA claims. For the reasons set forth in this Opinion and Order, BANA's motion is granted in part and denied in part.

### I. FACTUAL ALLEGATIONS

On December 23, 1985, the Hortons borrowed $48,163.00 from Investor Universal Service Corp., secured by a mortgage on their home. The mortgage note called for monthly payments of $370.33, starting on February 1, 1986, and required a final payment of any unpaid balance by January 1, 2016. The mortgage allowed for an adjustable interest rate, and required the holder of the mortgage to give the borrower written notice of any such adjustments on or before the change date.

BANA later became the holder of the Hortons' mortgage loan. According to the complaint, between February 1986 and January 2016, the Hortons consistently paid their mortgage and never received notice of an adjustment to their applicable interest rate. Shortly before their final payment, BANA sent the Hortons notice that their ordinary payment of $370.33 would not extinguish their debt and that a balloon payment was required. The Hortons claim that they have satisfied their obligations under the mortgage note. They filed this action on January 19, 2016.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings. "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When applying this standard, a court must accept as true all well-pleaded factual allegations and then ask whether those facts state a plausible claim for relief. *See id.* at 679. Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth." *Id.* at 678-79.

Here, BANA contends that this case is purely a breach-of-contract dispute and that the Hortons' unjust enrichment, negligence, fraud, and OCPA actions should be dismissed for failure to state a claim. The court considers these claims in turn.

### A. *Unjust Enrichment*

Unjust enrichment "is a recognized ground for recovery in Oklahoma," *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996), and describes "a condition which results from the failure of a party to make restitution in circumstances where it is inequitable," *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006). "Under Oklahoma law, a party may only recover under this theory by showing 'enrichment to another coupled with a resulting injustice.'" *Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1518 (10th Cir. 1991) (quoting *Teel v. Public Serv. Co.,* 767 P.2d 391, 398 (Okla. 1985)). As an equitable claim, unjust enrichment generally is unavailable where the plaintiff has an adequate remedy at law, *Harvell*, 164 P.3d at 1035, such as "when an enforceable express contract regulates the relations of the parties with respect to the disputed issue," *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997).

Here, BANA contends that a valid contract governs the parties' dispute and, consequently, that the Hortons cannot state a claim for unjust enrichment. In response, the Hortons contend that their unjust enrichment and breach-of-contract claims are alternative theories of recovery and that any unjust enrichment in this case occurred outside of the parties' contract.

The court agrees with BANA. The Hortons contest neither the validity of the parties' mortgage contract nor the applicability of that contract to the dispute at issue in this case. Rather, the Hortons merely contend that BANA collected more money under the mortgage than

it was contractually entitled. Plaintiffs can fully recover any such improperly collected funds via a claim for breach of contract. Thus, because an adequate remedy at law is available, BANA is entitled to judgment on plaintiffs' unjust enrichment claim.

### B. *Negligence*

The court next considers plaintiffs' negligence claim. In Oklahoma, "[t]he threshold question in any negligence action is whether the defendant has a duty to the plaintiff." *Sholer v. ERC Mgmt. Grp., LLC*, 256 P.3d 38, 43 (Okla. 2011). "Duty is a question of law for the court in a negligence action although the existence of a duty often depends on the relationship of the parties." *First Nat. Bank in Durant v. Honey Creek Entm't Corp.*, 54 P.3d 100, 105 (Okla. 2002). As a general matter, an individual owes a duty of care to others who are foreseeably endangered by his or her conduct. *See Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007).

Here, BANA submits that it owes no extra-contractual duties to the Hortons and, consequently, that their negligence claim fails as a matter of law. In response, the Hortons contend that BANA owed them a duty of ordinary care and that the damages they suffered were a foreseeable consequence of BANA's negligent collection practices.

The court agrees with the Hortons. "Oklahoma law has long recognized that an action for breach of contract and an action in tort may arise from the same set of facts." *Finnell v. Seismic*, 67 P.3d 339, 344 (Okla. 2003). In particular, the Oklahoma Supreme Court has held that "inherent in every contract [is] a common-law duty to perform its obligations with care, skill, reasonable experience and faithfulness," *id.*, and that "a negligent failure to observe any of these conditions is a tort, as well as a breach of contract," *Keel v. Titan Const. Corp.*, 639 P.2d 1228, 1232 (Okla. 1981). Thus, "[a] person injured by the substandard performance of a duty derived

from a contractual relationship may rely on a breach-of-contract or tort theory, or both," but, importantly, "can achieve [only] a single recovery." *See Finnell*, 67 P.3d at 344.  Here, BANA owed the Hortons a duty to perform its obligations under the mortgage with care, skill, reasonable experience, and faithfulness.  For this reason, BANA's motion for judgment on the pleadings as to the Hortons' negligence claim is denied.

### C. Fraud

BANA next seeks dismissal of plaintiffs' fraud claim.  As this court has consistently recognized, "Oklahoma law does not permit the simultaneous pursuit of fraud and breach of contract claims where the two claims are not sufficiently distinct." *Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Grp.*, No. 13-CV-762-JED-PJC, 2014 WL 3891267, at *5 (N.D. Okla. Aug. 7, 2014); *accord McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-0570-CVE-TLW, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012) (collecting cases). "Thus, where 'the facts alleged in a plaintiff's [fraud] claim are precisely the same as those alleged in his contract claim,' a separate [fraud] claim will not be allowed." *McGregor*, 2012 WL 314059, at *3 (alterations in original omitted) (quoting *Isler v. Tex. Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir. 1984)).

Here, BANA contends that the plaintiffs' fraud and breach-of-contract claims are based on the same facts and, consequently, that the fraud action should be dismissed for failure to state a claim.  In response, the Hortons submit that they have alleged facts constituting fraud and that those facts are "clearly distinct" from their breach-of-contract claim.  In particular, plaintiffs point to their allegations that BANA "provided [them] with inaccurate information" about their account statuses, "knowingly . . . represented . . . that [their] loan was in or nearing default," and

"misrepresented to [them] that making a balloon payment would prevent foreclosure efforts." [Dkt. #1, p. 19].

The court agrees with BANA. The Hortons' fraud and breach-of-contract claims are based on precisely the same conduct, namely, that BANA collected or attempted to collect more money under the mortgage than it was contractually entitled. "Plaintiff[s] cannot convert an ordinary breach of contract claim into a tort merely by alleging that defendants concealed their intention to breach the contract." *McGregor*, 2012 WL 314059, at *3; *accord Myklatun v. Flotek Indus., Inc.*, 734 F.3d 1230, 1236 (10th Cir. 2013) ("[T]he proper remedy for a breach of contract will be found in a breach of contract claim, not in a claim of fraud based on the breaching party's failure to disclose its potential future breach."). For this reason, the court holds that plaintiffs have failed to state a separate cause of action for fraud.

### D. Oklahoma Consumer Protection Act

Finally, BANA seeks dismissal of the plaintiffs' OCPA claim. "The OCPA was enacted to protect consumers from unfair and deceptive trade practices and," to that end, "provides a private right of action for aggrieved consumers." *Williams v. CSC Credit Servs., Inc.*, No. 07-CV-0255-CVE-FHM, 2007 WL 1959219, at *1 (N.D. Okla. June 29, 2007) (citing *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000)). To state a claim under the OCPA, a plaintiff must show

> (1) that the defendant engaged in an unlawful practice as defined [under 15 O.S. § 753]; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.

*Patterson*, 19 P.3d at 846. Section 753 identifies thirty-two (32) different "unlawful practices." *See* 15 O.S. § 753.

Here, the Hortons allege a violation of § 753(20), which prohibits "unfair [and] deceptive trade practice[s]." Such practices are defined as follows:

> 13. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;
>
> 14. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

*Id.* § 752.

BANA submits that the OCPA is inapplicable to mortgage loans. In making this argument, it points to an unpublished decision of the Oklahoma Court of Civil Appeals, holding that the OCPA does not apply to loan transactions. *See McClellon v. Wells Fargo Fin. Okla.*, No. 96,500, slip op. at 3-5 (Okla. Civ. App. 2001). In particular, the court in *McClellon* held that a loan is not a "consumer transaction" and that § 753's prohibition on "unfair trade practices" "does not include the actions of a bank in attempting to collect on a debt." *Id.* at 5. In response, the Hortons argue that their allegations extend beyond simple debt collection and that the OCPA should be liberally construed to effectuate its remedial purpose.

The court agrees with the Hortons. In Oklahoma, "[t]he primary goal of any statutory analysis is the determination of legislative intent which begins with an examination of the text of the provision." *Chandler v. Valentine*, 330 P.3d 1209, 1213 (Okla. 2014). Where the text "is plain and [its] meaning clear, the statute must be enforced as written." *Fleming v. Baptist Gen. Convention of Oklahoma*, 742 P.2d 1087, 1102 (Okla. 1987); *accord Yocum v. Greenbriar Nursing Home*, 130 P.3d 213, 219 (Okla. 2005). Here, there is nothing in the text of the OCPA that categorically excludes mortgage lending. Indeed, aside from two narrow exceptions not applicable here, *see* 15 O.S. § 754,[1] the only coverage limitation set forth in the statute is that the

---

[1] Section 754(2) exempts from the OCPA's coverage "[a]ctions or transactions regulated under" any other state or federal regulatory regime. Although it is possible that some other state or

- 7 -

challenged "unlawful practice" occur "in the course of the person's business." 15 O.S. § 753. Mortgage lending is certainly a "business." It is not the province of the courts to read additional limitations into the statute not provided by the legislature. *See Cox v. State ex rel. Oklahoma Dep't of Human Servs.*, 87 P.3d 607, 617 (Okla. 2004).

BANA contends that this limitation is implied in the term "consumer transaction." The court disagrees. The OCPA defines a "consumer transaction" as "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented." 15 O.S. § 752(2). Thus, the issue here is whether a loan qualifies as the "sale, purchase, or distribution of" a "service," "property," "article, commodity, or thing of value." The court concludes that it does. Almost every adjective and modifier in this definition is broad. It applies to "*any* service," "*any* property, *tangible or intangible*," and "*any other* article, commodity, or thing of value." The clear import of this definition is to broadly include *anything* that could be sold or marketed to a consumer. A mortgage loan certainly falls within this definition. If not property or a service, it is, at the very least, a "thing of value."

In reaching this conclusion, the court has given careful consideration to the Court of Civil Appeals's unpublished decision in *McClellon*. Where, as here, a federal court, sitting in diversity, is faced with an issue of state law on which there is no controlling precedent, the "court must attempt to predict how the state's highest court would resolve the issue." *Royal*

---

federal law may regulate unfair or deceptive mortgage lending practices, BANA has not cited any such authority. BANA contends that 25 C.F.R § 227.1 governs such practices. That regulation, however, was repealed earlier this year. *See* Unfair or Deceptive Acts or Practices (Regulation AA), 81 Fed. Reg. 8,133 (Feb. 18, 2016). BANA cites no other operative regulatory regime applicable to the actions at issue.

*Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005).  In doing, the court ordinarily "must follow the decisions of intermediate state courts," absent "convincing evidence that the highest court of the state would decide [the issue] differently."  *Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 467 (1940).  This same deference, however, does not apply to unpublished, nonprecedential decisions.  *See King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 159-61 (1948); *accord Comm'r v. Bosch's Estate*, 387 U.S. 456, 465 (1967).  Although entitled to "some weight," such lower court decisions are not binding upon a federal court sitting in diversity.  *See id.* at 160-61; *see also C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 136 (4th Cir. 2002) (noting that the "unreported status" of a lower state court decision "limit[s], but does not eliminate, its predictive value").

In Oklahoma, unpublished decisions like *McClellon* are "without value as precedent" and thus "shall not be considered as precedent . . . or cited in any brief" in the Oklahoma court system.  Okla. Sup. Ct. R. 1.200(c)(5).  According *McClellon* appropriate deference, *cf. King*, 333 U.S. at 160-61, the court here is convinced that the Oklahoma Supreme Court would decide the issue differently.  The court in *McClellon* gave little consideration to the text of the statute. In particular, it held that the OCPA does not apply to mortgage lending because "the relationship between a lender and debtor is [not] a 'service' contemplated by the Act."  *McClellon*, slip op. at 4.  As just mentioned, the OCPA is not limited to the sale of "services."  Rather, it extends to the sale or distribution of *anything* of value.  *See* 15 O.S. § 752(2).  Because *McClellon* is premised on an incomplete reading of the statute, the court doubts that the Oklahoma Supreme Court would follow its reasoning.

Two other circumstances lend support to this conclusion.  First, the court's reasoning in *McClellon* contravenes the Oklahoma Supreme Court's directive that the OCPA should "be

liberally construed to effectuate its [remedial] purpose." *Patterson*, 19 P.3d at 846. Second, of the courts that have addressed this issue under analogous statutes, the majority have held that their states' respective consumer protection statutes are applicable to mortgages or other loans.[2] Together, these circumstances provide strong evidence that the Oklahoma Supreme Court would not follow *McClellon*.[3] For these reasons, the court holds that the OCPA is applicable to consumer loan transactions and, consequently, that the Hortons' OCPA claim may go forward.

WHEREFORE, the Motion for Partial Judgment on the Pleadings [Dkt. #13] of defendant the Bank of America, N.A., is granted in part and denied in part. The motion is granted with

---

[2] *In re Smith*, 866 F.2d 576, 581-82 (3d Cir. 1989) (applying Pennsylvania law); *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414-16 (Mo. 2014); *Hawaii Cmty. Fed. Credit Union v. Keka*, 11 P.3d 1, 15 (Haw. 2000); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997); *Baird v. Norwest Bank*, 843 P.2d 327, 333 (Mont. 1992); *Villegas v. Transamerica Fin. Servs., Inc.*, 708 P.2d 781, 783 (Ariz. Ct. App. 1985); *La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984) (holding that a lender "may be subject to a [Deceptive Trade Practices Act] claim if the borrower's 'objective' is the purchase or lease of a good or service thereby qualifying the borrower as a consumer"); *State ex rel. Stephan v. Bhd. Bank & Trust Co.*, 649 P.2d 419, 422 (Kan. Ct. App. 1982); *Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610, 620 (N.C. 1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988). But see *Boubelik v. Liberty State Bank*, 553 N.W.2d 393, 402-03 (Minn. 1996), *superseded by statute*, Act of May 16, 1997, ch. 157, § 60, 1997 Minn. Laws 965, 996, *as recognized in Ly v. Nystrom*, 615 N.W.2d 302, 309 (Minn. 2000); *Shawmut Cmty. Bank, N.A. v. Zagami*, 586 N.E.2d 962, 967 (Mass. 1992); *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 861 (Alaska 1991); *Lamm v. Amfac Mortgage Corp.*, 605 P.2d 730, 731 (Or. Ct. App. 1980), *superseded by statute*, Or. Laws Spec. Sess. Ch. 94 (2010), *as recognized in Rubic v. Wells Fargo, Nat'l Ass'n*, No. 3:13-CV-01982-AC, 2015 WL 632235, at *2 (D. Or. Feb. 13, 2015). Although the court has endeavored to gather cases from as many jurisdictions as possible, this listing may not be exhaustive.

[3] BANA also contends that dismissal is warranted because the Hortons have not "identif[ied] any specific provisions of the OCPA that [it] has allegedly violated." [Dkt. #13, p. 13]. This argument is unpersuasive. "[P]laintiffs are not required to plead legal theories or cite appropriate statutes so long as [their complaint] gives fair notice of the claims asserted." *King v. Homeward Residential, Inc.*, No. 3:14CV00183 BSM, 2014 WL 6485665, at *2 (E.D. Ark. Nov. 18, 2014); *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996). Here, the court concludes that the Hortons' complaint provides fair notice of the basis for their OCPA claim. [*See* Dkt. #1, p. 19-20 (alleging that BANA knowingly misrepresented that the Hortons' loan was in or nearing default and that a balloon payment was necessary to prevent foreclosure)].

- 11 -

regard to the Hortons' unjust enrichment and fraud claims and denied as to their negligence and OCPA claims.

       IT IS SO ORDERED this 18th day of May, 2016.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT